UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

PETER GERACE, JR.,

Defendant.

1:23-CR-60 JLS (MJR)

DECISION AND ORDER

---

This case has been referred to the undersigned by the Hon. John L. Sinatra, Jr. pursuant to 28 U.S.C. § 636(b)(1) for all pre-trial matters and to hear and report upon dispositive motions. (Dkt. No. 2)

## BACKGROUND

*The Indictment*

Defendant Peter Gerace is charged with four counts of wire fraud in violation of Sections 1343 and 2 of Title 18 of the United States Code. (Dkt. No. 1) The indictment alleges that Gerace is the owner and chief executive officer of Pharaoh's GC, Inc. ("Pharaoh's"). (*Id.* at ¶ 2) Pharaoh's was a "gentleman's club" or "strip club" that offered live sexual performances to patrons in the form of exotic and/or nude dancing. (*Id.* at ¶ 3) Pharaoh's employed dancers who charged customers to engage in private or semi-private lap dances. (*Id.*)

The Economic Injury Disaster Loan ("EIDL") Program, enacted through the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, was a source of federal

emergency financial assistance for Americans suffering economic harm caused by the COVID-19 pandemic. (*Id.* at ¶ 5) The EIDL Program provided low-interest loans to qualifying small businesses to help them meet financial obligations and continue to operate during the pandemic. (*Id.*) In order to obtain a loan under the EIDL Program, a qualifying business was required to submit an online application to the United States Small Business Association ("SBA"), a federal government agency that provides support to entrepreneurs. (*Id.* at ¶ 4, ¶ 6) The EIDL application was to be signed by an authorized representative of the business and was to contain truthful and accurate information. (*Id.* at ¶ 6) Specifically, the representative was required to certify, *inter alia*, that (1) the applicant does not present live performances of a prurient sexual nature; (2) the applicant was not presently subject to an indictment, criminal information, or arraignment; and (3) the applicant had never been convicted, pled guilty, or placed on any form of parole or probation for any criminal offense. (*Id.*) These certifications were material to the SBA's determination of eligibility for an EIDL. (*Id.*)

Before an EIDL Program Loan could be disbursed, the applicant was required to review and sign a Loan Authorization and Agreement ("LA&A"). (*Id.* at ¶ 7) By the signing the LA&A, the applicant certified that all statements and representations in the loan application were true and correct. (*Id.*) This certification was also material to determining eligibility for an EIDL. (*Id.*) An EIDL Program applicant could also apply for modifications of the loan, including an increase in the amount of the loan. (*Id.* at ¶ 8) In those circumstances, the applicant was required to execute an Amended LA&A, certifying, *inter alia*, that there had been no substantial adverse changes in the borrower's financial

condition, including no new arrests or convictions for a felony offense. (*Id.*) This certification was material to determining eligibility for modification of an existing EIDL. (*Id.*)

Between March 2020 and December 2021, Gerace tricked and misled the SBA into approving a loan and two loan modifications under the EIDL Program by providing material false information to the SBA. (*Id.* at ¶¶ 10-11) Specifically, on April 5, 2020, Gerace submitted an online EIDL application to the SBA on behalf of Pharaoh's. (*Id.* at ¶ 12) The application falsely represented to the SBA that Pharaoh's did not present live performances of a prurient sexual nature and falsely represented that Gerace had never been convicted of any criminal offense.[1] (*Id.* at ¶¶ 13-14) On June 12, 2020, Gerace executed an LA&A in support of the fraudulent April 5, 2020 application, which falsely certified that all statements in the application were "true, correct, and complete." (*Id.* at ¶ 15) Based on Gerace's false representations, the SBA approved the loan application and disbursed $150,000 to Pharaoh's under the EIDL Program. (*Id.* at ¶ 16)

On August 7, 2021, Gerace executed an Amended LA&A, seeking to increase the loan he received under the EIDL Program to $500,000. (*Id.* at ¶ 18) In the Amended LA&A, Gerace again falsely certified that all statements in the initial application were true and correct, even though he knew a number of the statements were, and continued to be, false. (*Id.* at ¶ 18) Specifically, Pharaoh's still offered live performances of a prurient sexual nature and Gerace had been convicted of a federal felony offense in 2005. (*Id.*) Also in the Amended LA&A, Gerace falsely certified that there had been no substantial adverse changes to the applicant's financial condition since the date of the initial

---

[1] On or about November 23, 2005, Gerace was convicted in the United States District Court for the Western District of New York for Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 371. (Dkt. No. 1, ¶ 15)

application. (*Id.* at ¶ 19) However, Gerace knew, at that time, that (1) on or about February 25, 2021, he had been indicted and arrested for felony offenses in the Western District of New York; and (2) pursuant to that indictment, Pharaoh's and its assets had been designated as subject to criminal forfeiture. (*Id.*) Based on Gerace's false certifications, the SBA approved the loan modification and distributed an additional $350,000 to Pharaoh's under the EIDL Program. (*Id.* at ¶ 20)

On or about December 19, 2021, Gerace executed a Second Amended LA&A, seeking to increase the loan amount to $2,000,000. (*Id.* at ¶ 22) In the Second Amended LA&A, Gerace against falsely certified that all representations in his initial application and supplemental application were true and correct, even though he knew that a number of the statements therein were, and continued to be, false. (*Id.*) Specifically, Pharaoh's still offered live performances of a prurient sexual nature and Gerace had been convicted of a federal felony offense in 2005. (*Id.*) Gerace also again certified, in the Second Amended LA&A, that there had been no substantial adverse changes in the borrower's financial condition since the date of the initial loan application. (*Id.* at ¶ 23) But like in prior Amended LA&A, Gerace knew these statements were false, since he had been indicted and arrested on federal felony charges on February 25, 2021 and, as part of that indictment, Pharaoh's and its assets were designated as subject to criminal forfeiture. (*Id.*) Based on Gerace's false and fraudulent certifications, the SBA disbursed an additional $1,500,000 to Pharaoh's under the EIDL Program. (*Id.* at ¶ 24)

<u>Defendant's Motions</u>

On May 12, 2025, defendant filed pretrial motions requesting the following relief: (1) a change in vicinage of the trial; (2) disclosure of materials related to proceedings in

*United States v. Lucas*, 23-CR-405 (Dist. Utah 2023); (3) disclosure of *Brady* materials; (4) disclosure of *Jencks* materials; and (5) leave to make additional motions. (Dkt. No. 65) The Government filed a response (Dkt. No. 66) and defendant filed a reply (Dkt. No. 69). The Court heard oral argument on July 23, 2025, at which time it considered the matter submitted.

**DISCUSSION**

*Motion to Change Vicinage*

Federal Rule of Criminal Procedure 18 governs intra-district, or vicinage, transfers. It provides that "the government must prosecute an offense in a district where the offense was committed [and] [t]he court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." Fed. R. Civ. P. 18. Local Rule of Criminal Procedure 7 indicates that "parties requesting transfer of a case from Buffalo to Rochester, or vice versa, shall file a written motion requesting such relief, returnable to the Judge to whom the case was initially assigned." W.D.N.Y. Local R. Crim. P. 7.

Here, defendant requests transfer of the trial proceedings to Rochester on the basis that he cannot receive a fair trial in Buffalo. Defense counsel notes that Gerace's recent guilty verdict in *United States v. Bongiovanni, et al.*, Case No. 19-CR-227, has garnered significant media attention, and will continue to generate significant public interest in light of Gerace's upcoming sentencing. Defense counsel also notes that Gerace is currently charged in *United States v. Gogolack*, Case No. 23-CR-99. The *Gogolack* case, which involves allegations that Gerace participated in the murder of

government witness Crystal Quinn, has also garnered significant media attention and public interest.

The Government opposes the intra-district transfer, arguing, *inter alia*, that the parties can employ a thorough questionnaire and *voir dire* process to eliminate any jurors tainted by media exposure, much the same way the jury was selected in Case No. 19-CR-227. The Government further argues that defendant's motion should be determined by the trial court in the first instance. (Dkt. No. 66, pgs. 6-7) In response, defendant indicates that he "would not object to [the] Magistrate Judge's deferring this issue to the District Judge to be decided at a later date." (Dkt. No. 69, pg. 1, n. 1)

The District Court will preside over the trial, including all aspects of jury selection, and is therefore in the best position to weigh the Rule 18 factors. And because Judge Sinatra is the trial judge, the motion for an intra-district transfer should be left to his prerogative and judgment in the first instance. Thus, the Court denies the motion for intra-district transfer without prejudice to defendant's ability to renew this request before the District Court.

<u>United States v. Lucas</u>

The Government produced voluntary discovery to defendant on July 17, 2023. (Dkt. No. 66, pg. 2) On March 25, 2025, the Government further provided defendant with certain documents from *United States v. Lucas*, 23-CR-405 (Dist. Utah 2023), a fraud case where, like here, the government alleged that the defendant misrepresented his criminal history when applying for a EIDL Program loan. The *Lucas* documents provided by the Government, to Gerace's defense counsel, included: (1) the government's motion for leave to dismiss the indictment; (2) the government's supplemental motion *in limine*

regarding updates to EIDL criminal history classification; (3) an 11/25/24 memorandum of interview with an SBA employee; (4) a 12/5/24 memorandum of interview with SBA Director COVID EIDL Servicing Center; and (5) a memorandum of activity correcting the 12/5/24 memorandum of understanding. (Dkt. No. 65-2, the "*Lucas* documents")

The *Lucas* documents revealed that, during pre-trial preparation meetings with the government, an SBA representative provided information suggesting that defendant Lucas' loan may have been approved, after an additional review process, even if Lucas had disclosed his criminal history on the EIDL application. (Dkt. No. 65-2) The SBA witness further told the government that, despite Lucas' particular criminal history, the SBA would have been unlikely to deny his loan application. (*Id.*) Following these witness disclosures, the government moved to dismiss the indictment, noting that materiality was an element of the crime charged and "[b]ased on the SBA's admission that it would have been unlikely that [Lucas] would have been denied the loan despite his criminal history, [Lucas'] misrepresentation about his criminal history was not demonstrably material to the loan decision." (*Id.* at pg. 2) Thus, the government acknowledged that it "no longer had a good faith belief that it could prove beyond a reasonable doubt that [Lucas'] misrepresentations about his lack of criminal history were material to the SBA in its decision to deny the loan." (*Id.*)[2]

In light of the *Lucas* documents, Gerace now requests that the Government provide him with the following additional information or documents, should they exist:

---

[2] During oral argument, the Government represented that it learned of the *Lucas* documents when the prosecutor in the *Lucas* case sent the documents to a number of individuals, across the country, charged with coordinating fraud prosecutions related to the EIDL Program. The prosecutor in the *Lucas* case suggested that these individuals may want to consider disclosing the *Lucas* documents in their respective cases, if appropriate.

> All testimony, statements or memorandum memorializing statements of employees/agents of the SBA that speak to the materiality of the applicant's criminal history, including any and all such materials relating to Mr. Gerace and the [instant] case.
>
> All correspondence, notes, memoranda or communications between prosecutors in the Western District of New York and any principal, agent, or employee of the SBA regarding the materiality of the applicants' criminal history;
>
> All guidance issued by the Department of Justice, the SBA or any other federal agency regarding the materiality of representations made by applicants on EIDL loan applications;
>
> All material in the possession of the government that evidences the fact that the disclosure of criminal history on the EIDL loan application was not material to the SBA's decision of whether or not to fund or renew loans.

The Government counters that it voluntarily disclosed the *Lucas* documents to defendant in this case, and that defendant's additional requests are beyond the scope of Rule 16. (Dkt. No. 66, pgs. 18-19) The Government submits that the *Lucas* documents related solely to a dispute over the materiality of Lucas' false statements regarding his criminal history. The Government further submits that, unlike this case, the *Lucas* case did not also involve false statements about the applicant's presentation of live performances of a prurient sexual nature, nor did it involve the other types of material misrepresentations at issue here.

Here, the indictment alleges that Gerace provided false material information in his initial EIDL Program loan application as well as in his two subsequent requests for loan modifications. These allegedly false statements included that Gerace had not been convicted of any criminal offense, that Pharaoh's did not present live performances of a prurient sexual nature and that, at the time of the request for loan modifications, there had been no substantial adverse change in his or Pharaoh's financial situation. The

8

indictment alleges that the SBA approved the initial loan applications and the requests for loan modifications based on these false and fraudulent declarations.

Like in *Lucas*, the materiality of Gerace's allegedly false statements on his loan applications is an element of the crime charged. *See United States v. Denkberg*, 139 F.4th 147 (2d Cir. 2025) (explaining that a scheme to defraud under Section 1343 requires proof that defendant acted with fraudulent intent and that any misrepresentations were material) (internal citations and quotations omitted). For a statement to be "material," in this context, means that "the misinformation or omission would naturally tend to lead or is capable of leading a reasonable person to change his conduct." *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017).

Thus, should the Government possess information indicating that (1) Gerace's criminal history was not material to the SBA's loan decisions in this case; or (2) it is unlikely that Gerace would have been denied the initial loan or the loan modifications based on his prior criminal history, had he been truthful about it, such information constitutes *Brady* material and should be disclosed to defendant. *See United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) (noting that under *Brady* and its progeny, the government has a constitutional duty "to disclose favorable evidence to the accused where such evidence is 'material' to either guilt or punishment"). This would include any SBA policy statements or directives, in the government's possession, which indicate or suggest that an individual's criminal history disclosure was not material to the granting of an EIDL Program loan or loan modification.

Moreover, information as to the materiality of Gerace's allegedly false statements regarding his criminal history may constitute *Brady* material despite the fact that the

Government alleges that Gerace made other material false statements on his loan application separate and apart from falsely reporting his criminal history. The Court does not know the strength of the Government's proof as whole. Thus, it cannot be said, at this time, that exculpatory evidence as to the materiality of Gerace's false statements about his criminal history is unlikely to impact the outcome of a trial. *See Kyles v. Whitley*, 514 U.S. 419 (1995) (explaining that evidence constitutes *Brady* material where there is a "reasonable probability" that it would have "put the whole case in a such a different light as to undermine confidence in the verdict[.]"); *United States v. Rittweger*, 524 F.3d 171, 181 (2d Cir. 2008) ("The fact that the government may have some evidence that a particular defendant is guilty does not negate the exculpatory nature of the testimony of a witness with knowledge that a defendant did not commit the crime as charged.").

Therefore, the Government is ordered to (1) request a copy of the complete *Lucas* file from the United States Attorney's Office in the District of Utah responsible for the *Lucas* prosecution; (2) search the file for any additional *Brady* material in light of the findings herein; and (3) disclose any such material to defendant, should it exist.[3] The

[3] The Court acknowledges that "*Brady* does not require the government to search for exculpatory material not within its possession or control." *United States v. Raniere*, 384 F. Supp. 3d 282 (E.D.N.Y. 2019); *United States v. Hutcher*, 622 F.2d 1083, 1088 (2d Cir. 1980). An individual prosecutor is presumed, however, to have knowledge of all information gathered in connection with his office's investigation of the case and indeed "has a duty to learn of any favorable evidence known to other's acting on the government's behalf in the case." *Kyles v. Whitley*, 514 U.S. 419, 437-39 (1995). The Second Circuit has held that "knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor." *United States v. Avellino*, 136 F.3d 249 (2d Cir. 1997) (noting that imposition of an "unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require [the court] to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis.") (internal citations omitted). But here, the record clearly indicates that the Government has specific knowledge of the *Lucas* case and the existence of potential *Brady* material in that case file, as it relates to the instant matter. Moreover, the record shows that the prosecutor in the District of Utah has already shared relevant information with prosecutors in this case, and advised them that such information may need to be disclosed in other, similar cases. Thus, the Court does not find it unreasonable, based on the specific circumstances here, to require the Government to obtain the entirety of the *Lucas* file and to conduct a search for any additional *Brady* material applicable to this case, should it exist.

Government is also ordered to conduct another review of its own file in this case, in light of the findings herein, and to disclose any additional *Brady* material to defendant, should it exist. On or before September 10, 2025, the Government shall file an affidavit detailing its compliance with these directives.

*Rule 16 Discovery*

Defendant moves for discovery and inspection pursuant to Federal Rule of Criminal Procedure 16. (Dkt. No. 65, pgs. 15-17) Rule 16(a) requires the Government to disclose certain evidence and information upon request of a defendant. While Rule 16 was intended to provide for liberal discovery, a defendant is not entitled to discovery of "the entirety of the Government's case against him." *United States v. Percevault*, 490 F.2d 126, 130 (2d Cir. 1974). Rule 16 provides that a defendant is entitled to the following: (1) a defendant's written, recorded, or oral statements in the possession of the Government; (2) the defendant's prior record; (3) documents, objects, books, papers, photographs, *etc.* that will be used during the Government's case-in-chief; (4) reports of examinations or tests; (5) and information about expert witnesses in accordance with Fed. R. Evid. 702, 703 and 705. *See* Fed R. Crim. P. 16(a)(1). Rule 16 specifically exempts from disclosure "reports, memorandum, or other internal Government documents made by an attorney for the Government or other Government agent in connection with investigating or prosecuting the case." *See* Fed. R. Crim. P. 16(a)(2).

Defendant acknowledges that the Government has provided some voluntary discovery in this case. (Dkt. No. 65, pgs. 15-17) Defendant further requests, *inter alia*, statements of the defendant; defendant's prior criminal record; notice of whether any other evidence the Government intends to use at trial derives from searches and seizures

other than those arising in this case; and any examination or test results the Government intends to introduce at trial. (*Id.*) Defendant also requests written notification, pursuant to Federal Rule of Criminal Procedure 12(b)(4), of any evidence the Government intends to introduce at trial during its case-in-chief. (*Id.*)

The Government responds that it has already made the required disclosures through voluntary discovery and will continue to provide any discoverable materials it becomes aware of in conformity with Rule 16, and in response to reasonable requests by defendant. (Dkt. No. 66, pgs. 16-17) The Government submits that it has made available to defense counsel all relevant statements by defendant; a copy of defendant's criminal history records; and all photographs, papers, books, documents, and tangible evidence in the Government's possession which the Government intends to utilize at trial. (*Id.*) The Government states that it intends to use all items of evidence that defendant has been provided with or made aware of in accordance with Federal Rule of Criminal Procedure 12(b)(4)(A). (*Id.*)

Based upon the representations made by the Government, defendant's request for discovery pursuant to Rule 16 is denied as moot. The Government is reminded that its disclosure obligations pursuant to Rule 16 and its notice obligations pursuant to Rule 12 continue up through and during trial. *See* Fed. R. Crim. P. 16(c) and 12(b)(4)(A). Finally, the Government is expected to comply with all requirements in Rule 12, Rule 16, Federal Rules of Evidence 702, 703, and 704, and Judge Sinatra's pretrial order as they apply to expert testimony.

*Brady/Giglio Material*

In addition to the specific *Brady* disclosures discussed above, defendant generally moves for the disclosure of any favorable, exculpatory or impeachment materials pursuant to *Brady*, *Giglio*, and their progeny. (Dkt. No. 66, pgs. 18-24)

The Government has an obligation to disclose exculpatory material, or material favorable to an accused as to either guilt or punishment, even when no affirmative request has been made. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Material "favorable to an accused" includes not only evidence that affirmatively tends to exculpate the defendant, but also information that impeaches the credibility of Government witnesses. S*ee Giglio v. United States*, 405 U.S. 150, 154-55 (1972). The test for materiality is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Evidence may be material for *Brady* purposes even if it is not admissible, as long as it could lead to the discovery of admissible evidence. *United States v. Gill*, 297 F.3d 93, 104 (2d Cir. 2002). "[A]s a general rule, *Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant." *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). "[A]s long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *Id.* at 144.

Here, the Government states that it is aware of its obligations and responsibilities under *Brady* and acknowledges its duty under *Brady* to provide defendant with exculpatory evidence, as well as evidence that defendant might use to impeach the

Government's witnesses at trial. (Dkt. No. 66, pgs. 20-21) The Government agrees to provide *Giglio* material in accordance with the District Court's pretrial scheduling order. (*Id.* at pg. 21)

The Government has already been instructed to conduct a review of certain files for any additional *Brady* material, and to make all appropriate disclosures. The Government is further reminded of its continuing *Brady* obligations in general and, consistent with *Coppa*, the Government shall timely disclose any *Brady* and *Giglio* material to defendant. *See United States v. Padovani*, 14-CR-00224, 2016 WL 5402696, at *4 (W.D.N.Y. Sept. 28, 2016).

### *Disclosure of Jencks Material*

Defendant requests disclosure of all *Jencks* Act and 3500 material forty-five days before commencement of the trial, including any *Jencks* material as it relates to the materiality of his criminal record in regard to the EIDL loan application process. (Dkt. No. 65, pgs. 17-18)

The Government has no general duty to disclose the identities of its witnesses before trial. *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990). Moreover, the Second Circuit has held that "in the absence of a specific showing that disclosure [of a witness list] was both material to the preparation of [the] defense and reasonable in light of the circumstances surrounding [the] case," the request for a pretrial witness list should be denied. *Id.* at 13-140. Here, defendant has failed to make a particularized showing of the need for early disclosure of the Government's witness list.

Section 3500 of Title 18 of the United States Code requires that the government, on motion of defendant, disclose a government witness's prior statements that are in the

government's possession and relate to the subject matter of the witness's direct testimony ("*Jencks* material"). *See also Jencks v. United States*, 353 U.S. 657 (1957); Fed. R. Crim. P. 26.2 (procedure for producing a witness statement). A witness statement is defined as: (1) a written statement by a witness that is signed or otherwise adopted or approved by the witness; (2) a substantially verbatim recording or transcription of a witness's oral statement; or (3) any statement however taken or recorded made by the witness to the grand jury. 18 U.S.C. 3500(e). Statements are not required to be produced, by law, until after the witness has testified on direct examination, and the Court cannot mandate that they be produced sooner. *See* 18 U.S.C. §3500(a); Fed. R. Crim. P 26.2(a).

Here, the Government indicates that it will produce *Jencks* Act and 3500 material in accordance with the District Court's pretrial scheduling order. (Dkt. No. 66, pg. 19) In light of these representations, defendant's request for disclosure of *Jencks* Act and 3500 material is denied as moot.

<u>Leave to File Additional Motions</u>

Defendant moves to reserve the right to make further motions as necessary. (Dkt. No. 65, pgs. 24) To the extent defendant intends to bring motions based upon new information or evidence that has not yet been disclosed, his request for leave to file additional motions is granted. To the extent defendant intends to bring motions concerning issues that could have been raised prior to the previous motion deadline, defendant's request is denied without prejudice to bring the motion upon a showing of good cause for the untimely filing.

*Government's Motion for Reciprocal Discovery*

The Government moves for reciprocal discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure including the opportunity to inspect, copy or photograph books, papers, documents, photographs, tangible objects or copies or portions thereof which are in the possession, custody or control of defendant and which defendant intends to introduce as evidence at trial; the results or reports of any relevant physical or mental examinations or scientific tests or experiments made in connection with the case; and, upon the District Judge's issuance of a pretrial scheduling order, a summary of any testimony that defendant intends to offer under Rule 702, 703, or 705. (Dkt. No. 66, pg. 22) The Government's motion for reciprocal discovery is granted, and defendant is reminded that his disclosure obligations continue up through and during trial. *See* Fed. R. Crim. P. 16(c).

## CONCLUSION

For the foregoing reasons, defendant Peter Gerace's pretrial motions (Dkt. No. 65) are decided in the manner set forth above, and the Government's request for reciprocal discovery (Dkt. No. 66) is granted. The parties are directed to contact Judge Sinatra's chambers to schedule a trial date.

**SO ORDERED**.

Dated:   August 20, 2025
         Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge